669 So.2d 685 (1996)
Edna M. ANTLEY, Plaintiff-Appellant,
v.
James L. BRANTLY, et al., Defendants-Appellees.
No. 28049-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Rehearing Denied March 28, 1996.
*686 Travis M. Holley & Associates by Travis M. Holley, Bastrop, for appellant.
Dawkins & Carter by William S. Carter, Jr., Ruston, for appellee.
Before SEXTON, NORRIS and BROWN, JJ.
NORRIS, Judge.
This appeal in a vehicular accident case concerns the amount of damages awarded and the denial of the plaintiff's motions both to reopen the evidence and for a new trial. For the reasons that follow, we reverse the trial court's refusal either to reopen the evidence or grant a new trial, and we remand for further proceedings.

Procedural background
Edna M. Antley, was injured in an automobile accident in March 1993 in Rayville, Louisiana, when her car was struck by a car operated by James L. Brantley. Brantley's negligence and liability was not really at issue, and the trial court ultimately concluded there was no comparative negligence on the part of Ms. Antley.
The trial court awarded Ms. Antley $39,500 in general damages and $121,606.95 in special damages. Of the former amount, $9,500 for cervical strain, shoulder strain, general bruising, and fracture of the third metacarpal of the left hand is not being contested on appeal. Similarly, of the latter total, medical bills of $19,418.95 and loss of past earnings in the amount of $19,788.00 are not contested on appeal. Ms. Antley contests, however, the award of only $30,000 for injury to her right knee, special damages of only $65,000 for loss of future earning, $7,400 *687 for future medical, and $10,000 for non-market services. Ms. Antley challenges these awards, which are linked to the knee injury, not only as clearly inadequate based on the evidence presented at trial, but also as incorrect because of the trial court's refusal to reopen the evidence or grant a new trial to allow her to prove the true extent of the injury.
With respect to the general damage award for the knee injury, the trial court stated the following in its written reasons for judgment:
Plaintiff requests $75,000.00 as a general damage award for the right knee, while defendant suggest [sic] $25,000.00 would be proper. On November 15, 1993, Dr. Brown performed orthoscopic [sic] surgery, he removed a bone fragment and repaired a torn meniscus cartilage. The knee has continued to cause Edna Antley problems. On various occasions she has had aching, inflammation, swelling; the knee had to be drained of excess fluid on several occasions; a soft knee brace was applied, and the knee cap is tilting; and there is a possibility that a second orthoscopic [sic] surgery, a lateral patellar release, may be necessary.
Dr. Brown is of the opinion that there is a 30% to 40% disability of the knee, and a 25% disability of the leg. More medical care for the right knee is certainly in Edna Antley's future, regardless of whether or not she undergoes another surgery. Dr. Brown's opinion is that Edna Antley will need to see a specialist three to four times a year at $100.00 per visit. If the lateral patellar release is required to put the knee cap back in place, the cost would be $2,000.00 and this would be an 80% improvement.
After reviewing the cases cited by the parties, and considering the injuries to the right knee, this Court believes an award of $30,000.00 for general damages would be fair and reasonable.
The trial court's reasons for judgment also touched on the knee injury in considering an award for loss of future wages:
This Court is simply not convinced that Edna Antley is disabled to the extent that she will never work again. In fact it seems that Dr. Brown was just not sure and definite about his opinion. It appears that possibly she had not progressed far enough along in her treatment to allow him to reach a definite opinion. This Court understands his testimony to the effect that should she not be able to work with the brace, then the lateral patellar release surgery should be successful, and thereafter she should be able to do some type work. This Court does realize the disabilities assigned to the knee and the leg. This Court believes that it is very likely that she would be able to work some and that she would be able to find employment, either on a part-time basis or on a full-time basis, but at a lesser wage because of her disability. This Court believes that an award for loss of future wages or earning capacity in the amount of $65,000.00 would be fair and reasonable.
Approximately seven months after the June 1994 trial, but prior to the trial court's decision and rendition of judgment, Ms. Antley filed a motion on January 18, 1995 to reopen the case for receipt of additional evidence. Attached to the motion and memorandum in support was a copy of a progress note on Edna Antley from Dr. Brown, dated January 12, 1995, in which Dr. Brown stated that she ultimately would need a total knee replacement requiring five to seven days of hospitalization and three to six months of recovery. The progress note also indicated the cost of surgery as being $5,000.00 and the overall cost in the range of $20,000.00.
The trial court denied the motion to reopen the case and issued written reasons which stated in pertinent part:
At trial the parties presented extensive evidence of Edna Antley's injuries. The depositions of four physicians specifically concerning the right knee injury were admitted into evidence. In his deposition Dr. Brown stated that the knee replacement surgery was "a possibility."
This Court does not find that Dr. Brown's opinion has changed so dramatically as to require that the case be reopened to allow another deposition to be admitted into evidence. The doctor had *688 previously stated that the surgery was a possibility and now apparently believes that it is necessary. This type of medical decision is a progression rather than a dramatic change.
After the court denied the motion to reopen the case, issued reasons for judgment on the merits and signed a final judgment, Ms. Antley filed a motion for new trial. Attached to this was a post-trial deposition of Dr. Brown in which he stated that a total knee replacement was necessary. The trial court also denied the motion for new trial.

Discussion
The medical evidence concerning Ms. Antley's knee injury came in the form of deposition testimony of physicians. Of these, the deposition of Dr. Brown, her orthopedic surgeon, was the most significant, and it is apparent from the trial court's reasons for judgment that the court relied primarily upon this testimony in calculating the awards. After reviewing that testimony, we conclude that the previously quoted statements from the trial court's reasons for judgment on damages accurately reflect Dr. Brown's testimony. Further, the court's reasons for refusing to reopen the case are accurate in stating that Dr. Brown in his trial deposition considered knee replacement surgery "a possibility" and not a "probability." When directly asked whether he could rule out any further major intervention such as knee replacement, Dr. Brown stated:
No, I can't rule it out. I don't see that as something that we're talking about right now. That would probably be five to ten years from now, if necessary, if it became necessary. And it certainly could with the damage and the problems that she's had with her knee.
A fair assessment of the overall tenor of Dr. Brown's trial deposition gives a somewhat optimistic picture of Ms. Brantley's chances for improvement in the 30% to 40% disability of the knee he found at the time of his deposition. In short, these remarks are much more in the nature of an acknowledging what could occur, rather than what was likely to occur. Certainly, the trial court's damage awards and reasons for judgment show that the trial court did not give any significant weight to the possibility of a knee replacement. Therefore, Dr. Brown's subsequent conclusion, coming some six months after trial, that a knee replacement was now necessary, was very important information that could have led to a significantly different award of the general and special damages at issue on appeal.
The decision to reopen a case for the production of additional evidence after all parties have rested is within the sound discretion of the trial court and will not be disturbed on appeal unless manifestly erroneous. Bonner v. Watkins Motor Lines Inc., 494 So.2d 1363 (La.App. 2d Cir.1986). On the other hand, in order to prevent a miscarriage of justice, a trial court should not hesitate to reopen a case for the taking of additional evidence, or to grant a new trial when properly requested, and an appellate court should not hesitate to set aside the ruling of a trial court on such matters in a case of manifest abuse of discretion. See Lamb v. Lamb, 430 So.2d 51 (La.1983).
In Oswalt v. State, DOTD, 93-850 (La.App. 3d Cir. 3/30/94), 640 So.2d 388, writ denied 94-1106 (La. 6/24/94), 641 So.2d 207, the plaintiff died after the case was argued in the trial court, but before judgment was signed. Although the plaintiff died from causes unrelated to the accident at issue, the defendant filed a motion to reopen the case in order to present testimony of the effect of the plaintiff's death on the trial court's damage awards for future pain and suffering and future loss of wages. The trial court refused to reopen the case and also refused the defendant's post-judgment motion for a new trial. On appeal, the appellate court observed that under La.C.C.P. art. 1631 the trial court has the power to require that the proceedings be conducted so that justice is done, and quoted from Burthe v. Lee, 152 So. 100 (La.App.Orl.1934):
Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice. It is our duty to permit litigants all reasonable opportunity *689 to place before us all facts bearing on the issues involved.
While observing the trial court's discretion in deciding whether or not to reopen a case for additional evidence, the appellate court held that the trial court had abused its discretion by refusing to consider the full story of the case and should have granted the defendant's motion to consider the impact of the defendant's death from unrelated causes on those elements of the quantum awards which related to his future loss of wages and his future pain and suffering. The court noted that the plaintiff's death had come unexpectedly after the presentation of evidence so that the court was not dealing with a case in which the defendant could have discovered the evidence earlier.
As in Oswalt, supra, we are presented with a matter in which important new evidence came to light after the completion of the trial, but before the trial court had rendered its judgment. As in Oswalt, the trial court refused to reopen the case for the taking of additional evidence prior to rendering and signing the judgment, and after signing judgment refused to grant a new trial. Finally, as in Oswalt, the new evidence cannot be fairly characterized as discoverable at an earlier time. Instead, as presented by Dr. Brown at the time of trial, the prospect of a total knee replacement was a mere possibility, and the necessity for the surgery apparently was not realized until sufficient time had passed for a clearer prognosis to be made. The unusually long period of time between the completion of the trial and the rendition of judgment allowed this unusual evidentiary and procedural problem to arise.[1]
Considering the important potential impact that evidence of the necessity of a total knee replacement would have on the damage awards contested herein, and considering that Ms. Antley was not at fault in failing to present the evidence at trial, but sought to reopen the case prior to judgment and after learning of the existence of the evidence, we conclude that the trial court abused its discretion in refusing to allow the case to be reopened. We further conclude that the trial court erred in later refusing to grant a new trial. See La.C.C.P. art. 1972(2).
Because we conclude that the trial court erred in this manner, we set aside those damage awards previously identified as contested on appeal, and remand the case to the trial court for further proceedings. On the other hand, those findings and awards not contested on appeal are affirmed.

Conclusion
For the reasons set forth above, a new trial is hereby granted limited to the presentation of evidence concerning general damages for Ms. Antley's right knee injury and special damages for loss of future earnings, future medical, and non-market services. Otherwise, the trial court's judgment is affirmed.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS FOR LIMITED NEW TRIAL.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] Compare the maximum delay for rendering a judgment taken under advisement. Under R.S. 13:4207, the delay is 30 days.