706 So.2d 1030 (1998)
Charlene BROWN, as Administratrix of the Succession of Camillia Davis Hicks, Plaintiff-Appellee,
v.
Al HOBSON, Defendant-Appellant.
No. 30131-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
*1031 Bobby L. Culpepper, Jonesboro, for Defendant-Appellant.
Thomas A. Bordelon, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and GASKINS and PEATROSS, JJ.
GASKINS, Judge.
The defendant, Al Hobson, appeals from a trial court judgment finding that the heirs of Camillia Davis Hicks are the owners of a one-half interest in property in Jackson Parish. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff contends that Camillia Davis Hicks was the wife of Johnnie Hicks, Sr. In a deed dated October 7, 1937, "Johnny Hick," married to and living with Camillia Hicks (nee Davis) purchased forty acres of property described as follows:
The SE¼ of NW¼ of Section 29, Tp. 16 N.R. 2 West, and containing 40 acres more or less.
On March 25, 1946, "Johnie Hicks, married to Camilie Hicks (nee Davis) with whom he is now living," purchased an additional twentysix acres described as follows:
The W½ of W½ of NE¼ of Section 29, Twp. 16 N.R. 2 West, less the North 14 acres, located in Jackson Parish and being 26 acres more or less.
On April 15, 1981, Johnnie Hicks sold to D.V. Hobson and Al Hobson the following described property:
The NE¼ of SE¼ of NW¼ Sec. 29, Twp. 16 North, Range 2 West, Jackson Parish, and three (3) acres joining said ten acre tract on the West side of same, running North and South, being the West three (3) acres of the NW¼ of SE¼ of NW¼, Sec. 29, Twp. 16 North, Range 2 West, Jackson Parish Louisiana, making a total of thirteen (13) acres, more or less.
The deed reflects that, at the time of the sale, Mr. and Mrs. Hicks were married. On June 21, 1983, Mrs. Hicks died. Her succession was not judicially opened at that time.
In 1985, Al Hobson obtained D.V. Hobson's interest in the thirteen acres from his heirs, thereby becoming the sole owner of that tract. In 1989, Johnnie Hicks filed a petitory action against Al Hobson, claiming to be the true and lawful owner of the forty-acre tract in the SE¼ of the NW¼ of Section 29, less the thirteen acres conveyed to Mr. Hobson. Mr. Hicks claimed that neither he nor Mr. Hobson was in possession of the disputed tract, but that Mr. Hobson was asserting an adverse claim of ownership to the land by bringing criminal charges against Mr. Hicks' heirs for using the property. He also asserted that the dispute did not concern the thirteen acres conveyed to Mr. Hobson.
*1032 In March 1990, Mr. Hobson filed an answer and reconventional demand against Mr. Hicks, claiming that the dispute did concern the thirteen-acre tract purchased from Mr. Hicks and that Mr. Hicks cut timber from the property, allowed people to hunt on it, converted electrical service from the tract and generally destroyed the property. Mr. Hobson sought damages for mental anguish and attorney fees as well as three times the value of the merchantable timber.
In November 1990, Mr. Hobson obtained a default judgment in his favor on the reconventional demand, awarding him $8,750.00. Mr. Hobson then had all the property described above, and not previously disposed of by the Hicks, seized and sold at sheriff's sale, in satisfaction of the judgment. Mr. Hicks sought to enjoin the sale, claiming that the acts alleged by Mr. Hobson in his reconventional demand were committed by his son, Johnnie Hicks, Jr. and not by Mr. Hicks, Sr. The trial court rejected the petition for injunction and the property was sold at sheriff's sale to Mr. Hobson on October 2, 1991.
On October 17, 1994, Mrs. Hicks' succession was opened. Charlene Brown, as administratrix of the succession, filed the present suit on November 9, 1994, "to collect succession property," claiming that the land seized and sold to Mr. Hobson was community property between Mr. and Mrs. Hicks and that following her death, ownership of Mrs. Hicks' portion of the property vested in her estate. The plaintiff claims that, because Mrs. Hicks' heirs were not notified of the seizure and sale, it is an absolute nullity as to the succession's share of the property. The plaintiff sought to have the succession recognized as owner of an undivided one-half interest in the property.
Hearing on the merits was held on January 9, 1996. The parties agreed to file into evidence the record in the proceeding instituted by Johnnie Hicks against Mr. Hobson. They also filed the death certificate of Camillia Davis Hicks. The plaintiff then rested and the defendant moved for a judgment of involuntary dismissal. The trial court denied the motion.
Following the presentation of a very brief case by the defendant, he argued that there was no evidence before the court to establish that Johnnie Hicks and Camillia Davis Hicks were, in fact, married. The court allowed the record to remain open for the plaintiff to establish that Mr. and Mrs. Hicks were married. The plaintiff filed into the record a certified copy of a marriage license showing that Mr. and Mrs. Hicks were married on November 5, 1924.
On November 26, 1996, the trial court filed judgment in favor of the plaintiff. In reasons for judgment, the trial court stated that the property was community and therefore the succession of Camillia Davis Hicks is the owner of an undivided one-half interest in the property.
On December 2, 1996, the defendant filed a motion for new trial, arguing that the court was without authority to keep the record open for the filing of the marriage license and that the license contains numerous inconsistencies in the spelling of the parties' names and therefore is not sufficient proof of the marriage.
The motion for new trial was denied on March 11, 1997. The defendant appealed.

REOPENING CASE FOR ADDITIONAL EVIDENCE
On appeal, the defendant contends that the trial court erred in holding the case open to allow the plaintiff to introduce Mr. and Mrs. Hicks' marriage license after the plaintiff had rested. The plaintiff acknowledges that the trial court has great discretion to reopen a case for production of additional evidence. However, the defendant asserts that the marriage license was discoverable before the trial and did not corroborate any testimony introduced at the hearing. Therefore, the defendant contends that the trial court abused its discretion by allowing the plaintiff an additional opportunity to present evidence to meet its burden of proof. This argument is without merit.
The decision as to whether to reopen a case for the production of additional evidence rests within the discretion of the trial judge, whose discretion will not be disturbed on appeal unless manifestly erroneous. *1033 La. C.C.P. art. 1632; Antley v. Brantly, 28,049 (La.App.2d Cir. 2/28/96), 669 So.2d 685; Blaney v. Hulsey, Harwood & Hulsey, 27,983 (La.App.2d Cir. 2/28/96), 669 So.2d 661; Harris v. West Carroll Parish School Board, 605 So.2d 610 (La.App. 2d Cir.1992), writ denied, 609 So.2d 255 (La.1992). Our jurisprudence has long provided that, where no injustice is done by the trial court's action in reopening the case for additional evidence, the court's action is not an abuse of discretion. Hornsby v. Rives, 2 So.2d 532 (La.App. 2d Cir.1941). As stated in Antley v. Brantly, supra, a trial court should not hesitate to reopen a case for the taking of additional evidence in order to prevent a miscarriage of justice.
The plaintiff contends that the trial court did not err in allowing the introduction of the marriage license because it was corroborative of the marital status listed in the deed by which the Hicks obtained the ownership of the property in question. In the present case, the defendant was aware that the plaintiff contended that the property at issue was the community property of Johnnie and Camillia Davis Hicks. Further, the deeds by which the Hicks acquired the property recite that Johnnie Hicks was married to and living with Camillia Davis Hicks. Also, the deed by which Al Hobson and D.V. Hobson acquired 13 acres of property recites that Johnnie Hicks was married to and living with Camillia Davis Hicks. Therefore, the defendant was not surprised or unduly prejudiced by the introduction of the new evidence in the form of the marriage license between Mr. and Mrs. Hicks. Accordingly, we find that the trial court did not abuse its discretion and was not manifestly erroneous in allowing the case to be reopened for the production of additional evidence on the issue of whether Mr. and Mrs. Hicks were married.

COMMUNITY PROPERTY
The defendant argues that the trial court erred in finding that the property at issue was community property of Johnny Hicks, Sr. and Camillia Davis Hicks. The defendant argues that the deeds filed into evidence are the only support for the trial court's finding that this was community property and they are not sufficient to prove that the Hicks were married. The defendant further argues that the marriage license contains so many discrepancies in the names of the parties that the document is not adequate proof of the marriage. This argument is without merit.
La. C.C. art. 2338 provides in pertinent part that:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse....
The defendant argues that the trial court erred in finding the property seized and sold to Mr. Hobson was the Hicks' community property because the plaintiff failed to establish that Johnnie and Camillia were married when the property was acquired. The marriage license introduced into evidence shows that Johnnie Hicks and Camillia Davis Hicks were married on November 5, 1924. As noted by the defendant, the document contains a variety of spellings for the parties' names and Mrs. Hicks' death certificate indicates she was born on April 13, 1907. Therefore, at the time of the marriage, she would have been seventeen years old, whereas on the marriage license, her age is listed as nineteen. The defendant contends that these discrepancies cause the marriage license not to be sufficient proof that the parties were married.
Legislation and jurisprudence recognize that minor technical discrepancies in legislation and legal documents are not, in all instances, invalidating. The Louisiana Legislature has provided that clerical errors in the Revised Statutes shall be disregarded when the meaning of the legislation is clear. La. R.S. 1:5. In Succession of Bilyeau, 28,701 (La.App.9/25/96), 681 So.2d 56, writ denied 96-2868 (La.1/24/97), 686 So.2d 862, where an attestation clause in a will was attacked for technical deviations, this court held that those deviations did not invalidate the dispositive portions of an otherwise valid will. Similarly, and specifically limited to the facts before us, we find that, because the discrepancies here are minor and the status of marriage is supported by other evidence, the *1034 evidentiary value of the marriage license is not defeated in this case.
The evidence in the record shows that Johnnie Hicks and Camillia Hicks were married in 1924. The deeds by which the subject properties were acquired in 1937 and 1946 recite that Johnnie and Camillia Hicks are married and living together. The deed conveying property to D.V. and Al Hobson represents that Johnnie and Camillia Hicks are married and living together. Camillia Davis Hicks' death certificate in 1983 reflects that her surviving spouse is Johnnie Hicks, Sr. Based upon these factors, and absent proof to the contrary, we must conclude, as did the trial court, that Johnnie and Camillia Hicks were married when the subject property was acquired and therefore, it is community property.

OWNERSHIP
The defendant argues that the trial court erred in finding the plaintiff to be the owner of an undivided one half interest in the property in question. This argument is without merit.
The defendant contends that even if the property is community, the judgment against Mr. Hicks was a community obligation, because it arose from a sale of property from Mr. Hicks to Mr. Hobson while Mrs. Hicks was still alive. Therefore, the defendant asserts that the property could be used to satisfy a community debt. The defendant cites La. C.C. art. 2357 for the proposition that community property could be seized and sold in satisfaction of the judgment against Mr. Hicks. That article provides that an obligation incurred by a spouse before or during the community property regime may be satisfied after the termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.
An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. However, this legal regime of community property is terminated by the death of a spouse. La. C.C. art. 2356. Even though the sale of the property giving rise to the dispute between Mr. Hicks and Mr. Hobson occurred during the existence of the community, the obligation owed by Mr. Hicks arose from the cutting and sale of timber. No evidence is found in the record to show when this quasi-offense occurred. Seven years had passed between the time of Mrs. Hicks' death and the filing of the reconventional demand by Mr. Hobson. Under these circumstances, it was the defendant's burden to show that this obligation arose during the existence of the community, which he failed to do. Therefore, La. C.C. art. 2357 has no application to this case. The judgment against Mr. Hicks was not a community obligation.
The defendant next argues that if the judgment was Mr. Hicks' separate obligation, then under La. C.C. art. 2364, Mrs. Hicks' heirs are entitled only to reimbursement for one half the value of the property at the time of the seizure and sale. We also reject this reasoning.
La. C.C. art. 2364 provides:
If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one half the amount or value that the property had at the time it was used.
This article seems to contemplate the use of community property to satisfy a separate obligation incurred before or during the existence of the community property regime. The article specifically provides for reimbursement after the termination of the community property regime. In this case, the obligation arose and the judgment was entered after Mrs. Hicks' death and therefore, after the termination of the community property regime. Accordingly, we do not find that this article applies under these facts to limit Mrs. Hicks' heirs to reimbursement for the value of the property at the time of the seizure and sale.
The defendant contends that Mrs. Hicks' heirs received sufficient notice of the seizure *1035 and sale at the time of the occurrence. The defendant also notes that some of the heirs attempted to stop the seizure and sale on other grounds and that it is now too late to attack the sale. These arguments are without merit.
Since this seizure was based on an obligation due by Mr. Hicks solely, the cases cited by the defendant relating to notice to spouses regarding community obligations are not pertinent. The case of Magee v. Amiss, 502 So.2d 568 (La.1987), where the wife was judicially separated from her husband, but the judgment of separation was not recorded in the mortgage records, is more analogous to our situation. In Magee, the husband failed to pay a small roofing bill eight years after the separation judgment, and a lien was filed by the roofer, resulting in the house being sold at sheriff's sale to satisfy the judgment. The wife filed suit, asking that the sheriff's sale be declared a nullity as to her undivided one-half interest in the house. The Louisiana Supreme Court found that one with a legally protected property interest, such as the wife, is entitled to notice of the pending sale of the property. The court found that, because the wife did not receive notice, the sale was invalid as to one-half interest in the house.
In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United State Supreme Court recognized that prior to any action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. In Mullane and Mennonite, the Court also found that published notice was not sufficient to notify the parties with a significant property interest of the pendency of an action involving the property.
When Mr. Hobson purchased the disputed thirteen acre tract from Mr. Hicks, the deed reflected that Mr. Hicks was married to Camillia Davis Hicks. Also, the deeds by which Mr. Hicks obtained the property seized and purchased by Mr. Hobson, reflect his marriage to Mrs. Hicks. Therefore, Mr. Hobson had information showing the community nature of the assets he seized and purchased.
Further, La. C.C.P. art. 2371 provides that in a sheriff's sale made in satisfaction of a judgment, the adjudication transfers to the purchaser all the rights and claims of the judgment debtor as completely as if the judgment debtor sold the property. Comments to the article state that the purchaser acquires the rights which the judgment debtor had, and no more. In this case, Mr. Hicks only owned an undivided one half interest in the property. Therefore, in the sheriff's sale, the defendant acquired only Mr. Hicks' undivided one-half interest.
In Magee, discussed above, the Louisiana Supreme Court found that a spouse owning a ½ interest in community property was entitled to notice prior to the seizure and sale of community property to satisfy a separate debt of another spouse. As in Magee, we find in the case sub judice, that the alienation of the succession's interest in the property required notice apart from mere publication and advertisement of the sale. Because the heirs did not receive proper notification of the impending sale, the sale was invalid as to the succession's one-half interest in the property at issue here.
We also reject the defendant's argument that the administratrix could only bring a petitory action against him. The petition alleges the nullity of the sheriff's sale as to the succession's interest in the property due to failure to receive notice. The plaintiff's action was proper.
We also decline the defendant's argument that the heirs are now prevented from asserting the invalidity of the sale because they previously attempted unsuccessfully to enjoin the sale on grounds other than those asserted in this case. Artie Ree Williams, a daughter of Camillia Davis Hicks, testified that she and a cousin sought legal counsel to determine whether the sale could be stopped. However, the record shows that the petition for injunction was brought by *1036 Johnnie Hicks, Sr., not Mrs. Hicks' heirs. Further, the grounds for the injunction concerned the dispute between Mr. Hicks and Mr. Hobson, rather than raising any ownership claims by the succession. The defendant has failed to show how Mr. Hicks' action seeking an injunction against the sale would now bar the succession from asserting a violation of due process rights.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court, in favor of the plaintiff, Charlene Brown, as administratrix of the succession of Camillia Davis Hicks, recognizing the succession as owner of an undivided one half interest in the property seized and sold to the defendant, Al Hobson. We find that the seizure and sale of the succession's one half interest in the property is invalid on due process grounds due to failure to notify the succession representative or the heirs of Camillia Davis Hicks, prior to the seizure and sale. Costs in this court and in the court below are assessed to the defendant, Al Hobson.
AFFIRMED.